## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARISOL VELEZ, individually and on behalf of all similarly situated persons, | ) ) ) | |
| | ) | Case No. 12 C 4857 |
| Plaintiffs, | ) ) | Judge Ronald A. Guzman |
| | ) | Magistrate Judge Michael T. Mason |
| v. | ) | |
| | ) | |
| LONGHORN STEAKS, INC. and DARDEN RESTAURANTS, INC. d/b/a LONGHORN STEAKHOUSE, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION UNDER SECTION 216(b) OF THE FLSA AND TO ISSUE NOTICE TO CLASS MEMBERS

Plaintiff Marisol Velez is a former employee of LongHorn Steakhouse restaurant located in Norridge, Illinois. As set forth herein, LongHorn violated the Fair Labor Standards Act ("FLSA") by requiring Velez and other servers to perform substantial cleaning and other duties for the "tip credit" minimum wage, by requiring servers to participate in a mandatory tip pool in which the restaurant skimmed a portion of their earned tips, and by requiring servers to work off the clock, before and after their regularly scheduled shifts. Plaintiffs bring this Motion pursuant to Section 216(b) of the FLSA, and request the issuance of court-approved notice to an "opt-in" class defined as follows:

> all persons who have been employed by Defendants or their predecessors as servers at anytime from June 2009 through and including the present and until final resolution of the case, and who have not been paid the statutory minimum wage for all regular hours worked, or overtime

wages at the rate of one and one half times their regular rate for all the time worked over 40 hours in individual work weeks (herein "FLSA Class").

The certified declarations of Marisol Velez and Joseph Kilgallon, along with the records attached as Exhibits hereto, establish that Velez and members of this proposed class are "similarly situated," and that the class should be conditionally certified.  Notice should be sent to apprise class members of their right to join this suit, and judicial economy will be served if these common questions of fact and law are adjudicated collectively.

### SUMMARY OF PLAINTIFFS' CLAIMS

LongHorn is a restaurant chain with locations throughout the United States. Velez worked at its Norridge, Illinois store from approximately January 2006 until her resignation in January 2011. *See* Declaration of Marisol Velez, ¶4-5.  Declarant Joseph Kilgallon worked as a server at its Norridge, Illinois location from approximately January 2006 until July 2007, and at the Des Plaines, Illinois location from approximately December 2007 until April 2008. *See* Declaration of Joseph Kilgallon, ¶3.  During Plaintiff Velez's employment, LongHorn violated the FLSA in three ways: (a) by requiring servers and other tipped employees to perform non-tipped job functions for the tip-credit minimum wage; (b) by requiring servers to participate in an illegal tip pool in which the company retained a portion of servers' tips; and, (c) by requiring servers to work certain hours "off the clock," i.e., without pay.  These unlawful practices are suitable for collective action, and are summarized as follows:

**LongHorn's Requirement that Tipped Employees Perform Deep Cleaning and other Similar Duties for Sub-Minimum Wage.**  As is the case with most restaurants, servers at LongHorn received tips from customers for providing service, i.e., taking orders, serving food and drinks, etc. Velez Decl., ¶7; Kilgallon Decl., ¶6. LongHorn avails itself of the FLSA's "tip credit" provisions, and pays its servers, including Velez, less than the regular minimum wage. Velez Decl., ¶8; Kilgallon Decl., ¶7.  29 U.S.C. § 203(m).

Under the FLSA, the tip credit "may be taken only for hours worked by the employee in an occupation in which the employee qualifies as 'tipped employee.'" 29 C.F.R. 531.59.  The employer must maintain and preserve records that show, among other things, which employees are paid in part by tips, and, for those employees, how many hours in each workday are worked in occupations in which the employee receives tips and how many are worked in any occupation in which the employee does not receive tips. 29 C.F.R. § 516.28(a).  LongHorn violated these provisions by requiring servers to devote substantial time performing deep cleaning and other tasks which were completely unrelated to providing service to customers, and by paying the tip credit (sub-minimum) wage for these tasks.

Specifically, on average, for 1 to 2 hours after each server's last table of customers left, LongHorn required the server to deep clean the dining area, deep clean the kitchen or "back of the house", and roll silverware. Velez Decl., ¶12; Kilgallon Decl., ¶10.  This work included: deep cleaning booths, booth ledges, chair legs, and chair seats; deep cleaning floor boards; removing gum from under tables and chairs; cleaning

soda guns; soaking coffee and tea urns and cups, then placing them in dishwasher machine; manually washing dishes and silverware; cleaning and dusting artifacts and decor; deep cleaning kitchen walls; deep cleaning metal surfaces in the kitchen with chemical cleaner; deep cleaning kitchen shelves with chemical cleaner; and cleaning the soda machine and tubes. Velez Decl., ¶12; Kilgallon Decl., ¶10. This type of deep-cleaning work is customarily performed by non-tipped employees (who are paid at a higher hourly rate), such as janitors, maintenance workers, and dishwashers. Much of the work was done in the kitchen, and in areas where customers are not permitted. Attached as Exhibit D is an example of a Memo which was distributed to servers at LongHorn, and which detailed examples of the "weekly cleaning duties and end of day duties" which servers were required to perform. Exhibit D; Velez Decl., ¶13; Kilgallon Decl., ¶11.

Additionally, LongHorn also required servers to roll large amounts of silverware (100 rolls per server) before and after each serving shift. Velez Decl., ¶16; Kilgallon Decl., ¶14. This requirement caused servers to spend additional time before or after the end of their serving shifts performing non-tipped work. Velez Decl., ¶16; Kilgallon Decl., ¶14. Deep cleaning and extensive sidework are not duties of a "tipped employee" since, *inter alia,* this work was primarily performed at times when customers were not in the restaurant.

In approximately 2009, Velez complained to a manager that LongHorn was paying her the tip-credit minimum wage while performing these non-tipped job duties after serving shifts. Velez Decl., ¶19. In response, the manager ignored her complaint and walked away. Velez Decl., ¶19. Similarly, in approximately 2007, Declarant Joseph

Kilgallon complained to a manager that LongHorn was paying the tip-credit minimum wage for cleaning and sidework duties. Kilgallon Decl., ¶17. The manager did not take Mr. Kilgallon's complaint seriously, and walked away. Kilgallon Decl., ¶17.

Defendants' practice of failing to pay servers the full minimum wage for time spent performing non-tipped job duties subjects them to a forfeiture of the tip credit allowance and is a common policy ideally suited for class treatment. *Ervin v. OS Rest. Svcs.*, 632 F.3d 971 (7th Cir. 2011) (class of tipped employees who claimed they were required to perform tasks during which they could not earn tips); *Curless v. Great American Real Food Fast,* No. 3:10-cv-00279, 2012 U.S. Dist. LEXIS 5709 (S.D. Ill. 1/28/12) (certifying Section 216(b) collective action based on allegations that tipped employees were required to perform non-tipped work at sub-minimum wage).

**LongHorn's Illegal Tip Pool**. The FLSA's tip credit provisions permit the "pooling of tips" but bar the employer from retaining "any of the employees' tips for any other purpose." 29 U.S.C. § 203(m)(2); 29 C.F.R. 531.54; *Ayers v. 127 Restaurant Corp.*, 12 F. Supp. 2d 305 (S.D.N.Y. 1998) (tip pool invalid under FLSA where management retained a portion of the tips). LongHorn violated this prohibition by regularly retaining a portion of its "tip pool".

LongHorn mandates that servers participate in a tip pooling arrangement whereby a portion of their tips are distributed to hosts, food runners, bussers and service bartenders. Exhibit A, Darden-LongHorn Employee Handbook, at p. 50. The tip pool was administered as follows: After each shift, LongHorn required each server, including Velez, to contribute a portion (2.3 percent) of his or her total sales to the tip pool. Velez Decl., ¶21; Kilgallon Decl., ¶19. LongHorn's computerized cash register

system calculated the amount each server owed. Velez Decl., ¶20; Kilgallon Decl., ¶18.

A manager then required servers to "cash out". Velez Decl., ¶20; Kilgallon Decl., ¶18.

After each shift, a server either owed the restaurant part of her cash earnings, or the

restaurant owed the server part of its credit card earnings, depending on the proportion

of cash (versus credit card) payments the server received. Velez Decl., ¶20; Kilgallon

Decl., ¶18.  If the server owed the restaurant part of her cash earnings, Longhorn

"rounded up" the "tip out" amount, unless the server had exact change or specifically

asked for change back. Velez Decl., ¶22.  For example, if the server owed $12.52,

management's policy and practice was to take $13.00 from the server. Velez Decl., ¶22.

In the alternative, if LongHorn owed the server part of its credit card receipts, it

"rounded down," unless the restaurant had exact change, the server could provide

change, or the server specifically asked for the entire amount. Velez Decl., ¶23.  For

example, if the restaurant owed the server $12.52, management's policy and practice

was to return only $12.00 to the server. Velez Decl., ¶23.  This practice resulted in

Defendants' unlawfully retaining portions of the tips received by Plaintiff and the class,

in violation of the FLSA. 29 U.S.C. § 203(m). *Ervin v. OS Rest. Svcs.*, 632 F.3d 971 (7th

Cir. 2011) (collective action against employer by employees who alleged employer used

tip pool funds to make up for cash register shortages); *Dominguez v. Don Pedro Rest.*,

No. 2:06 cv 241, 2007 U.S. Dist. LEXIS 6659, 12 Wage & Hour Cas. 2d (BNA) 477

(N.D. Ind. 1/25/07) (certifying collective action on behalf of servers who alleged they

were required to participate in an illegal tip pool with other restaurant personnel).

**Off the Clock Work.** The FLSA requires an employer to compensate employees for all hours which it suffers or permits them to work. 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work"). If the employer knows (or should have known) that its employees are working, they must be paid. 29 C.F.R. 785.11 ("Work not requested but suffered and permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift . . . The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time."). It is the employer's obligation to ensure that employees do not work off the clock, and that they are fully compensated for all their work time. 29 C.F.R. § 785.13; *Skelton v. AIU Online*, 382 F.Supp.2d 1068 (N.D. Ill. 2005). LongHorn violated these well-established principles by regularly requiring employees to work off the clock.

LongHorn's written policies required that employees must work 30 hours per week in order to be eligible for its PPO medical plan. Exhibit B, "My Payroll Guide," at p. 6. LongHorn also maintained a policy and practice of requiring servers to obtain a manager's approval before receiving paid overtime. Velez Decl., ¶25; Kilgallon Decl., ¶20. These policies created an incentive for individual store managers to limit payroll expenses, and to encourage off the clock work.

All servers at LongHorn clocked into the same timeclock system, which was called the "POS" system. Velez Decl., ¶9; Kilgallon Decl., ¶8. Employees used a swipe card to clock in and out. Velez Decl., ¶9; Kilgallon Decl., ¶8. Time worked "off the clock" was not paid. Velez Decl., ¶9; Kilgallon Decl., ¶8. Attached as Exhibit C are examples of Ms. Velez's time card and tip reports. Exhibit C; Velez Decl., ¶10. All servers received printouts such as these. Velez Decl., ¶10.

LongHorn regularly required servers to clock out when they reached the 40-hour threshold to avoid paying overtime, and required servers to stay and complete their shifts off the clock. Velez Decl., ¶26; Kilgallon Decl., ¶21.  LongHorn also required servers to wait, off the clock, for the closing manager to complete the "final report," and to escort the manager to his or her car. Velez Decl., ¶27.  LongHorn required servers to wait, off-the-clock, at the end of the shift after their sidework was completed, and to correct any problems noted by the manager. Velez Decl., ¶17; Kilgallon Decl., ¶15. LongHorn required each server roll a specific amount of silverware each day (100 rolls), and servers frequently came in early before the start of their serving shifts to begin rolling silverware. Velez Decl., ¶16; Kilgallon Decl., ¶14.  Servers regularly did not clock in for this work. Velez Decl., ¶16; Kilgallon Decl., ¶14.  LongHorn required servers to attend regular staff meetings, which often lasted more than one hour. Velez Decl., ¶28; Kilgallon Decl., ¶22.  Servers regularly did not clock in for this work. Velez Decl., ¶29; Kilgallon Decl., ¶23.

All of the above-described "off-the-clock" practices were common to all servers at LongHorn.  These practices caused servers to not be paid for all their work time, and are appropriate for collective adjudication. *Unilock Chicago, Inc.*, 383 Ill. App. 3d 752; 892 N.E.2d 78; 322 Ill. Dec. 831 (1st Dist. 2008)(reversing denial of class certification and certifying IMWL and IWPCA class of plant employees subjected to off-the-clock work prior to the shift start and during unpaid lunch breaks); *Ladegaard v. Hard Rock Concrete Cutters,* No. 00 C 5755, 2000 U.S. Dist. LEXIS 17832 (N.D. Ill. Dec. 1, 2000)(same); *O'Brien v. Encotech Constr. Servs.,* 203 F.R.D. 346 (N.D.Ill. 2002)(same), *rev'd on recon. on other grounds,* 183 F. Supp. 2d 1047 (N.D.Ill. 2002).

## ARGUMENT

**I.      Plaintiffs Have Made a Sufficient Evidentiary Showing for a
        Collective Action to Be Conditionally Certified and Notice Sent
        to Similarly Situated Current and Former Employees**

Plaintiffs seek to certify this action as a "collective action" under Section 216(b) of

the FLSA.  Section 216(b) states as follows in relevant part:

> An action to recover the liability prescribed in either of the preceding
> sentences may be maintained against any employer (including a public
> agency) in any Federal or State court of competent jurisdiction by any one
> or more employees for and in behalf of himself or themselves and other
> employees similarly situated.

29 U.S.C. §216(b).

Collective actions under the FLSA differ from class actions authorized by Federal

Rule of Civil Procedure 23 – in FLSA cases the plaintiff is given notice and an

opportunity to opt in, rather than notice and an opportunity to opt out. *Ervin et al. v. OS

Rest. Servs.,* 632 F.3d 971 (7ᵗʰ Cir. 2011); *Woods v. N.Y. Life Ins. Co.,* 686 F.2d 578,

579-80 (7th Cir.1982); *Jirak v. Abbott Laboratories, Inc.,* 566 F. Supp. 2d 845, 847 (N.D.

Ill. 2008).

In *Madden v. Corinthian Colleges, Inc.*, the Court outlined the procedure for

FLSA collective actions litigated in the Northern District of Illinois:

> [C]ourts in this circuit generally have followed a two stage approach to
> certification in FLSA collective actions . . . In the first stage, plaintiffs must
> demonstrate that there are similarly situated employees who are potential
> claimants . . .  During this stage, courts employ a "lenient interpretation" of
> the term "similarly situated" and require "nothing more than substantial
> allegations that the putative class members were together the victims of a
> single decision, policy, or plan." . . . If a plaintiff makes the requisite
> showing, the court may allow notice of the case to be sent to the similarly
> situated employees, who then can elect to opt in as plaintiffs, and also
> allow discovery related to the merits of the plaintiffs' claims . . . In the
> second stage, following the completion of the opt-in process and merits-

> related discovery, the defendant may ask the court to reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis . . . At this stage, the court reviews several factors including the employment settings of the individual plaintiffs, defenses available to the defendant that may be individual to each plaintiff, and fairness and procedural considerations.

*Madden*, No. 08 C 6623, 2009 U.S. Dist,. LEXIS 115331, at 5-7 (citations omitted); see also, *Jirak,* 566 F. Supp. 2d at 847.

The Court in *Vander Vennet v. AIU Online*, No. 05 C 4889, 2005 U.S. Dist. LEXIS 45344 (N.D. Ill. 12/22/05) reiterated this standard and noted that a "unified policy" is not necessarily required as long as judicial economy is served by common resolution of an otherwise identifiable factual or legal nexus:

> There must be a demonstrated similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated; an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws generally must be present. . . A *unified* policy, plan, or scheme, though, is not necessarily required to satisfy the similarly situated requirement, especially if a collective action would promote judicial economy because there is otherwise an identifiable factual or legal nexus.

2005 U.S. Dist. LEXIS 45344 *27 (citations omitted).  Both Courts in *Madden* and *Vander Vennet* certified FLSA-collectives on behalf of admissions counselors who, as here, alleged they were denied overtime pay in violation of the FLSA.

At the first stage, where discovery has only just begun, courts have found that evidence similar to that described above (i.e., declaration(s) from the named plaintiff(s) and other records) is sufficient to meet the "lenient" standard for notice and certification. *Smith v. Safety-Kleen Sys.,* No. 10 C 6584, 2011 U.S. Dist. LEXIS 40670 (N.D. Ill. 4/14/11) (class conditionally certified based on named plaintiff's declaration and company's policies); *Larsen v. Clearchoice Mobility, Inc.,* No. 11 C 1701, 2011 U.S.

Dist. LEXIS 80899 (N.D. Ill. 7/25/11) (declarations of two lead plaintiffs attesting that they, and eleven co-workers who held similarly positions, were subject to common practices that violate the FLSA was sufficient at "notice" stage);  *Madden*, 2009 U.S. Dist. LEXIS 115331 at 11 ("[C]ourts have relied on affidavits from named plaintiffs to conditionally certify an off-the-clock collective action, even when defendant disputes such evidence with its own affidavits"); *Anyere v. Wells Fargo, Co.*, No. 09 C 2769, 2010 U.S. Dist. LEXIS 35599 at 5-7 (N.D. Ill. 4/12/10)(Certifying collective action on the basis of the five affidavits of the named representative plaintiffs); *Botempo v. Metro Networks,* No. 01 C 8969, 2002 U.S. Dist. LEXIS 11810 at 6-7 (N.D. Ill. 5/2/02)(issuing notice to all account executives in the United States based on Plaintiff's testimony that she was mis-classified, and on the fact that other account executives were compensated the same way); *Howard v. Securitas Secs. Svcs., USA,* No. 08 C 2746, 2009 U.S. Dist. LEXIS 3913 at 7-8 (N.D.Ill. 1/20/09)("At the notice stage, the burden of proof is not heavy; nevertheless, the plaintiffs must demonstrate, through the pleadings and affidavits, a factual nexus between the plaintiff and the proposed class or a common policy that affects all the collective members").

Minor factual differences among the class members are not sufficient to defeat certification at the Notice stage, where as here, there is a common practice which impacts the class. *Garza v. Chicago Transit Authority*, No. 00 C 0438, 2001 U.S. Dist. LEXIS 6132 at 9 (N.D. Ill. 5/8/01) ("That the Plaintiffs and other potential plaintiffs may have different jobs in the rail system, earn different amounts of money, and have attended different amounts or types of training does not mean that they are not operating under the same policies that allegedly entitle them to overtime pay").

As set forth above, LongHorn violated the FLSA "tip credit" provisions by requiring Velez and other servers to perform substantial cleaning and preparation duties for the "tip credit" minimum wage and by requiring servers to participate in a mandatory tip pool in which the restaurant retained a portion of their earned tips. In addition, the company violated the FLSA by requiring plaintiffs to work off the clock, before and after their regularly scheduled shifts. These practices were common throughout the class, and thus raise common questions of fact or law which substantially predominate over any issues particular to any one class member. Judicial economy, along with the important policy aims underlying the FLSA[1], will be served best if the common factual and legal questions arising these practices are adjudicated collectively in one proceedings.

All of these factors combined are sufficient to meet the "modest factual showing" that Plaintiffs and are "similarly situated" to the class for the conditional certification and notice stage. Indeed, courts in this district have conditionally certified collectives which were larger and less homogenous than that proposed herein. *Russell v. Illinois Bell Telephone,* 575 F. Supp. 2d 930, 937 (N.D. Ill. 2008)(conditionally certifying off-the-clock collective action to employees in four separate call centers); *Jirak,* 566 F. Supp. 2d at 848 (granting certification of a class of pharmaceutical representatives who

---

[1]The FLSA is remedial in nature, and "should be liberally construed so as to effectuate its humanitarian purposes." *Walling v. Consumers Co.,* 149 F.2d 626, 630 (7th Cir. 1945). In urging Congress to enact the FLSA, U.S. President Franklin Delano Roosevelt eloquently articulated its aims, and his words which bear remembrance: "Our nation so richly endowed with natural resources and with a capable and industrious population should be able to devise ways and means of insuring to all our able-bodied working men and women a fair day's pay for a fair day's work. A self-supporting and self-respecting democracy can plead no justification for the existence of child labor, no economic reason for chiseling workers' wages or stretching workers' hours." H.R. Rep. 101-260, at 9 (1989), *reprinted in* 1989 U.S.C.C.A.N. 696, 696-97.

worked in six different franchises); *Hundt v. DirectSat United States LLC,* No. 08 C 7238, 2010 U.S. Dist. LEXIS 51116 (N.D. Ill. 5/24/10)(finding that warehouse managers, warehouse supervisors, general managers, and field managers are similarly situated where they had similar job duties and were uniformly classified as "exempt"); *Smallwood v. Ill.Bell.Tel.Co.,* No. 09 C 44232, 2010 U.S. Dist. LEXIS 44232 *18 (N.D. Ill. 5/6/10) ("Plaintiffs are authorized to send notices of a collective action pursuant to Section 216(b) to all persons who are or have been employed by the Illinois Bell Telephone Company under the job description "Manager OSP Planning and Eng Design" for the three-year period prior to April 27, 2010, and who started working at Illinois Bell prior to May 16, 2009.")

For all these reasons, the proposed collective action should be conditionally certified, and Notice sent to potential class members.

## II. Plaintiffs' Proposed Notice Should Be Sent to the Above-Described Class As Soon As Practicable

Notice should be sent as soon as practicable because under most circumstances, the damages period for "opt in" plaintiffs begins to run on the date they opt into the lawsuit. 29 U.S.C. §256(b). Attached hereto as Exhibit E are sample "Notice" and "Consent" forms. Both are patterned after the Notice issued in *Vander Vennet v. AIU Online*, 2005 U.S. Dist. LEXIS 45344 at 36-41 (N.D. Ill. 12/22/05). Plaintiffs request this Court Order Defendants to produce a mailing list of the class described above within seven days, so the attached notice may be sent to the above-described class.

-14-

## CONCLUSION

**WHEREFORE**, for all the above reasons, plaintiff respectfully prays for an order:

(1) Approve mailing of Exhibit E - the Notice and Consent to Join forms;

(2) Order defendants to produce within seven days, a current and computerized mailing list of all relevant employees, as set forth above; and,

(3) Order such other relief as the Court deems fair and just under the circumstances.

Respectfully submitted,

ROBIN POTTER & ASSOCIATES, P.C.

/s/ Robin Potter
One of Plaintiffs' Attorneys

Robin Potter, Esq.
M. Nieves Bolanos, Esq.
Stacey L. Scanlon, Esq.
Robin Potter & Associates, P.C.
111 East Wacker Drive - Suite 2600
Chicago, Illinois  60601
(312) 861-1800
robin@potterlaw.org
nieves@potterlaw.org
stacey@potterlaw.org

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION UNDER SECTION 216(b) OF THE FLSA AND TO ISSUE NOTICE TO CLASS MEMBERS** was served upon all parties by way of process server, transmitted to process server this 20th day of June, 2012 for service upon the below address:

> LongHorn Steaks, Inc.
> c/o Darden Restaurants, Inc.
> Corporate Creations Network
> 1443 W. Belmont Ave., Suite C
> Chicago, IL 60657

/s/ Robin Potter
Robin Potter