IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MARISOL VELEZ, individually and on behalf of all similarly situated persons,**<br><br>Plaintiff,<br><br>v.<br><br>**LONGHORN STEAKS, INC. and DARDEN RESTAURANTS, INC. d/b/a LONGHORN STEAKHOUSE,**<br><br>Defendant. | No. 12-cv-04857<br><br>Judge Ronald A. Guzman |

### DARDEN RESTAURANTS INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

In support of its Motion for Partial Summary Judgment, Defendant Darden Restaurants, Inc. "Defendant" or the "Company") hereby states as follows:

In this action, Plaintiff Marisol Velez ("Velez") alleges that when she was a server at LongHorn Steakhouse ("LongHorn"), Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et. seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et. seq.* Relevant to the instant motion are Velez's claims that Defendant violated these statutes by allegedly requiring her to work off the clock.

Defendant is entitled to summary judgment on these claims as a matter of law. Velez's testimony confirms that the parties had no contract or agreement that she would be paid for time allegedly worked when she was not clocked in. Absent such a contract or agreement, her IWPCA claim fails. As for her FLSA and IMWL claims, as well as her IWPCA claim, Velez

testified that she was actually paid for some of the specific types of off-the-clock work alleged in her complaint. The evidence also establishes that Velez has already been paid the maximum amount that she could be owed for her alleged work off the clock, which either moots her claim or completely offsets it. For these reasons, which are fully explained below, Defendant respectfully requests that the Court grant its motion for partial summary judgment and dismiss Plaintiff's IWPCA claim and her FLSA and IMWL claims for off-the-clock work, with prejudice.

## I.  STATEMENT OF MATERIAL FACTS

### A.  Velez's Claims and Procedural Background

On June 19, 2012, Plaintiff Marisol Velez filed a Complaint on behalf of herself and other LongHorn servers. She claims that Defendant "promised and agreed to pay Plaintiff and the class at their hourly rates of pay for all hours worked" (Defendant's Statement of Material Facts "SOMF") ¶ 4) and further alleges that Defendant engaged in the following "five major schemes" to avoid payment of minimum wages and regular and overtime pay in violation of the FLSA, the IMWL and the IWPCA:

> A. Violating the tip credit provision by failing to pay servers at the regular minimum wage rate for non-tipped employees;
>
> B. Violating the tip credit provision by unlawfully retaining portions of the tip pool;
>
> C. Requiring servers to complete certain job duties off the clock;
>
> D. Suffering and permitting servers to complete certain job duties off the clock;
>
> E. Reducing on time cards the amount of time servers worked if they forgot to clock out at the end of a shift.

(SOMF ¶ 5). Velez's tip credit and tip pooling claims are not subject to this motion.

Defendant moved to dismiss Velez's IWPCA claim on the grounds that the right to the wages sought must be based on a contract or agreement, and that Velez did not properly plead

that one existed. (SOMF ¶ 6). The Court denied Defendant's motion, concluding that Velez's allegation that Defendant "promised and agreed to pay Plaintiff and the class at their hourly rates of pay for all hours worked" was sufficient at the pleadings stage. (*Id.*)

Discovery commenced in this case in August 2012. (SOMF ¶ 7). Velez has not propounded any discovery requests or taken any depositions. (*Id.*) Defendant produced documents identified in its Initial Disclosures, including Velez's time punch and payroll record, and also took Velez's deposition. (*Id.* ¶ )[1]

### B. Velez's Allegations and the Evidence Regarding Alleged Work Off the Clock[2]

Velez claims in her complaint that the Company suffered or permitted her and other servers to work off the clock, and required her and other servers to work off the clock by: (1) requiring them to clock out but continue working; (2) requiring them to attend staff meetings off the clock; and (3) clocking them out before they actually stopped working whenever servers forgot to clock themselves out. (SOMF ¶ 8).

At her deposition, Velez confirmed that she never had an expectation that she would be paid for any work performed off the clock. (SOMF ¶ 9). She further testified that no one at LongHorn, including the top manager at her location (the Managing Partner), that manager's boss (the Director of Operations), or anyone in HR, ever told her that she would be paid for work done off the clock. (*Id.* ¶ 10). Rather, Velez knew that the only work for which she was going to be paid was the work that was reflected on her time card. (*Id.* ¶ 11).

Contradicting her allegations in the complaint about not being paid for attending meetings, Velez admitted that since at least 2006, she had been clocking in and out when she

---

[1] Defendant bases this motion on Velez's admissions and its time punch and payroll records for Velez.
[2] Defendant does not concede that Velez worked off the clock, but it accepts her allegations as true for purposes of this motion, except to the extent that she contradicted them with her testimony.

attended staff meetings and that she was being paid for that time. (SOMF ¶ 12) She also acknowledged that she was paid minimum wage (as opposed to the tip credit rate) for those meetings. (*Id*. ¶ 13) Velez admittedly has no reason to believe that managers had not accurately clocked her in and out for meetings when she failed to do so herself. (*Id*. ¶ 14) She also knows of no meeting for which she either was not paid or was underpaid. (*Id*. ¶ 15.)

In the complaint, Velez also contends that the company deprived her and other servers of overtime by requiring them to clock out "when they reached the 40 hour threshold" while also requiring them to continue working. (SOMF ¶ 16). At her deposition, however, Velez clarified that her manager once told her that she was approaching 40 hours, so she needed to "wrap it up" and not take any more tables. (*Id*. ¶ 17). This manager did not instruct her to punch out and continue working off the clock (*Id.* ¶ 18), as Velez alleged in her complaint.

### C. Velez Complained About Working Off the Clock and Was Paid

Velez sent her Director of Operations a multi-page document that she authored, which purported to describe all of her grievances against LongHorn. (SOMF ¶ 19). This document contained a specific allegation that she worked 53 minutes off the clock on one occasion when she forgot to clock out, and her manager clocked her out before she actually stopped working. (*Id.* ¶ 20) In response, Velez's Director of Operations paid Velez for this time. (*Id.* ¶21). She received $141.20 to cover the 53 minutes (*Id.* ¶ 22), even though the value of that 53 minutes, is less than $4.95 at her hourly tip credit wage, and less than $8.25 at the hourly minimum wage.

Although not raised in her purportedly comprehensive grievance document (SOMF ¶ 24), Velez testified that 61 times during her tenure at LongHorn, she worked between 5 and 15 minutes off the clock performing closing sidework tasks. (*Id.* ¶ 23). Assuming that she worked the maximum of 15 minutes each time, she would be owed for 915 minutes, or 15.25 hours. At her $4.95 tip credit wage, she would be owed $75.49. Even if she were entitled to minimum

wage, rather than the tip credit wage, she would be owed $125.81.[3] The $141.20 she received in response to her claim that she had worked off the clock covers both the 53 minutes she specifically complained about, as well as this additional amount she now claims to be owed.

### D. Velez Received Additional Pay for Time She Did Not Work

Velez submitted a letter of resignation on January 11, 2011. (SOMF ¶ 27). Her Director of Operations advised her that in addition for paying her for the 53 minutes she allegedly worked off the clock, she would also be paid for any regularly scheduled shifts that she would have worked through January 25, 2011. (*Id.* ¶ 28). Velez did not work at LongHorn past January 7, 2011. (*Id.* ¶ 29). Nevertheless, the Company paid her $646.72 for the period 1/10/11 – 1/16/11. (*Id.* ¶ 30). It paid her $582.45 for the period 1/17/11 - 1/23/11, and it paid her $202.10 for the period 1/24/11 – 1/30/11. (*Id.* ¶ 31). And it paid her another $176.50 for the period 1/24/11 – 1/25/11. (*Id.* ¶ 32). Leaving aside the pay for her reported 53 minutes working off the clock, Velez was paid $1,607.77. (*Id.* ¶ 33). Velez acknowledged that this was payment for time that she did not work. (*Id.* ¶ 34).

## II. THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will find that a fact is material only if it is critical to the determination of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Spivey v. Adaptive Marketing LLC*, 622 F.3d 816, 822 (7th Cir. 2010). A genuine dispute of material fact sufficient to preclude summary judgment will be found to exist

---

[3] Velez worked in excess of forty hours only once during her employment at LongHorn (Velez Dep. I at 94:24-95:5), and she was paid overtime for that week (Babitt Decl. ¶ 5). Beyond that, her longest recorded work week was 35.62 hours. (*Id.* ¶ 6). Even if she worked off the clock each shift that particular week at the highest estimated amount (6 shifts times 15 minutes), she would have worked only 37.12 hours. Thus, all of this alleged off-the-clock work is straight time.

only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the claim. *Anderson*, 477 U.S. at 248.

In assessing a party's motion for summary judgment, the non-movant's evidence "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (internal quotations omitted). While evidence in the record is to be construed in the favor of the non-movant, once a motion for summary judgment has been made, the non-movant may only defeat summary judgment by setting forth specific facts showing that there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 255. To meet this standard, the non-movant "must do more than raise some metaphysical doubt as to the material facts; [it] must come forward with specific facts showing that there is a genuine issue for trial." *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Thus, inferences supported only by speculation or conjecture will be found insufficient to create a genuine factual issue. *See Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 720 (7th Cir. 2008).

Finally, summary judgment is appropriate when it is clear that the non-movant has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. ARGUMENT

Defendant's motion for partial summary judgment should be granted because (1) Velez admittedly had no contract or agreement with Defendant for all hours worked, and therefore has no basis for claiming unpaid wages under the IWPCA; (2) Velez acknowledges that she was paid for her attendance at staff meetings and for the one alleged incident in which her manager clocked her out too early; and (3) Velez was paid an amount that covers all work allegedly

performed off the clock, and accordingly, her off-the-clock claims are either moot, or completely offset. Each of these arguments will be addressed in turn.

> A. **Summary Judgment Is Warranted On Plaintiff's IWPCA Claim Because There Was No Agreement That She Would Be Paid For All Hours Worked**

The Illinois Wage Payment and Collection Act "does not establish a substantive right to overtime pay," or to payment of any particular wage. *DeMarco v. Northwestern Mem'l Healthcare*, No. 10 C 397, 2011 WL 3510896, at *6 (N.D. Ill. Aug. 10, 2011) (internal citations omitted). Rather, it provides that an employer must pay an employee only "compensation owed . . . pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2. Central to this framework is the established presence of a contract or agreement setting forth the terms of the compensation. *See Stark v. PPM Am., Inc.*, 354 F.3d 666, 672 (7th Cir. 2004) (stating that plaintiffs pursuing claims under the IWPCA must show that they have "a right to compensation pursuant to an employment contract or agreement"); *Galietta v. Comdisco Holding Co.*, 2003 U.S. Dist. LEXIS 2982, *3 (N.D. Ill. 2003) ("The IWPCA . . . merely requires that the employer honor his contract; it does not confer rights in the absence of a contract.").

While an "agreement [under the IWPCA] is broader than a contract and requires only a manifestation of mutual assent on the part of two or more persons," *Zabinsky v. Gelber Grp., Inc.*, 807 N.E.2d 666 (Ill. App. Ct. 2004) (internal quotation marks omitted), an employee and employer do not automatically form an agreement simply by engaging in remunerated work. Instead, an agreement under the IWPCA requires mutual understanding and assent *to the particular terms* of the employment. *See Smith v. C.H. James Rest. Holdings, LLC*, 2012 U.S. Dist. LEXIS 9960 (N.D. Ill. Jan. 26, 2012) ("To conclude that Smith had some sort of informal agreement with Defendants merely by working for them would render moot the rule that the IWPCA does not provide an independent substantive right to pay absent some agreement."). As

such, in order for the IWPCA to apply to an employment arrangement, there must be mutual agreement or contract between an employee and employer that specifies the relevant terms and the compensation of the employment.

Although Velez alleges in her complaint that there was a contract or agreement by which Defendant promised to pay her for all hours worked, the evidence contradicts this claim. She plainly testified that she never had any expectation that she would be paid for work that she performed off the clock. (SOMF ¶¶ 9, 11). She also confirmed that nobody in management or HR ever told her that she would be paid for work that she performed off the clock. (*Id.* ¶ 10). Thus, there is no evidence supporting the existence of a contract or agreement for this work, and the Court should grant summary judgment for Defendant on her IWPCA claim. *See Oplchenski v. Parfums Givenchy, Inc.*, 2009 U.S. Dist. LEXIS 13522, *8-9 (N.D. Ill. Feb. 19, 2009) (granting defendants summary judgment because the plaintiffs had "failed to point to evidence showing they had contractual agreements . . . for compensation for which they were not paid").

### B. Summary Judgment Is Warranted On Velez's Off-the-Clock Claims

#### 1. Velez Was Paid for Meetings

In addition to allegedly working off the clock to complete sidework, Velez claims in her complaint that she was denied pay for meetings she attended. Defendant is entitled to summary judgment on these claims because Velez testified that she was paid for this time. She admitted that she was paid for attending meetings, and she stated that she knows of no meeting for which she was not paid or underpaid. (SOMF ¶¶ 12-15).

Because there is no material factual dispute with regard to these issues, and it is clear that any factual basis for Velez's claim that she was not properly paid for attendance at staff meetings is lacking, summary judgment for Defendant is appropriate.

### 2. Velez Cannot Recover Any Additional Compensation for Time Allegedly Worked Off the clock

#### a. Velez's Off-the-clock claims Are Moot

In order for a suit to survive, an actual controversy must exist at all stages of the litigation; cases in which the dispute has been resolved must be dismissed as moot. *Schmidt v. Reich*, 835 F. Supp. 435, 439 (N.D. Ill. 1993). There is no controversy in this case entitling Velez to compensation for time allegedly worked off the clock. Upon being apprised of her claim that she worked off the clock, Defendant paid her. (SOMF ¶¶ 19-21). The amount it paid her far exceeded the 53 minutes of time that she specifically reported having worked off the clock. (SOMF ¶ 22). In fact, it also happens to cover the additional $125.81, which is the maximum she could be owed for other time that she now claims to have worked off the clock at the end of her shifts.

In an analogous situation, the Seventh Circuit affirmed dismissal of a plaintiff's FLSA claim, finding that it was moot. In *DiGiore v. Ryan*, the defendant temporarily assigned the plaintiff to a position and paid him as an exempt employee. In response to the plaintiff's claims that he was entitled to overtime, the defendant agreed to pay him "for past, present, and future hours of overtime worked." *DiGiore v. Ryan*, 172 F.3d 454, 465-66 (7th Cir. 1999), *overruled on other grounds*, *Whetsel v. Network Prop. Servs.*, LLC, 246 F.3d 897, 903-04 (7th Cir. 2001). The district court concluded that this rendered the plaintiff's overtime claim moot, and the Seventh Circuit affirmed. *Id*. *See also Winokur v. Bell Fed. Sav. & Loan Assoc.*, 560 F.2d 1034, (7th Cir. 1977) (plaintiffs' claims were moot because they admitted that defendants paid their claimed damages -- $12 each -- and there was nothing more to gain from their claim).

The amount that Defendant has already paid Velez covers the entire amount that she now claims to be owed for working off the clock at the end of her shifts. Thus, her off-the-clock claim is moot.

### b. Velez's Claims for Off-the-Clock Work Are Offset by Payments She Received for Non-Work Time

Even if the Court further considers Velez's claim for off-the-clock work, her "damages" would be completely offset by what she has already been paid. This Circuit has long recognized that an employer may offset paid non-work time against unpaid time. For example, in *Barefield v. Village of Winnetka,* 81 F.3d 704 (7th Cir. Ill. 1996), the court considered employees' FLSA claims that they had not been properly compensated for hours worked in excess of forty per week. The employees in that case admitted, however, that they had been compensated for non-work meal periods. Although the employees urged the court to look at these two facts in isolation from one another, the court concluded that the employee's claims of unpaid time should be weighed against time for which they were admittedly overpaid (or unnecessarily paid). The court reasoned that the employer "chose to pay the employees for 30 minutes of non-work time each day (the meal period). [The employer] reserved the right to offset 30 minutes of 'work' time beyond regular working hours against this paid non-'work' time." *Id*. at 710.

Similarly, in *Singer v. City of Waco*, employees argued on appeal that the district court had erred when it held that their employer could "offset overpayments in some work periods against shortfalls in other work periods." 324 F.3d 813 (5th Cir. 2003). In affirming the district court's decision not to award overtime to the employees, the appellate court determined that applying the offset was proper, as it was a "simpl[e] acknowledge[ment] that the [employer] already paid the bulk of its overtime obligations." *Id*.

Before Velez left LongHorn, there is no dispute that she was paid approximately $1,607.77 for non-work time. (SOMF ¶¶ 33-34) That more than covers the $125.81, which represents the most Velez could be owed for her alleged work off the clock. Accordingly, Defendant is entitled to summary judgment on her IWPCA claims and her FLSA and IMWL claims for off-the-clock time.

## IV. CONCLUSION

For each of the foregoing reasons, Defendant is entitled to summary judgment on Velez's IWPCA claims, and on her claims for unpaid time allegedly worked off the clock under the FLSA and IMWL.

Respectfully submitted,

*s/ Amy S. Ramsey*

Dated: November 9, 2012

John A. Ybarra ARDC# 06196983
Amy Schaefer Ramsey ARDC# 6270557
LITTLER MENDELSON, P.C.
A Professional Corporation
321 North Clark Street
Suite 1000
Chicago, IL 60654
312.372.5520

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on November 9, 2012, a copy of the foregoing *Defendant's Memorandum in Support of its Motion for Partial Summary Judgment* was electronically filed with the U.S. District Court, Northern District of Illinois. Notice of this filing will be sent by operation of the Court's electronic filing system to the following parties and to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic system.

>Robin B. Potter
>robin@potterlaw.org
>Maria De Las Nieves Bolanos
>nieves@potterlaw.org
>ROBIN POTTER & ASSOCIATES, P.C.
>111 East Wacker Drive, Suite 2600
>Chicago, IL 60601
>
>Douglas M. Werman
>dwerman@flsalaw.com
>WERMAN LAW OFFICE, P.C.
>77 West Washington, Suite 1402
>Chicago, IL 60602
>
>Jamie G. Sypulski
>jsypulski@sbcglobal.net
>LAW OFFICE OF JAMIE GOLDEN SYPULSKI
>150 North Michigan Avenue, Suite 1000
>Chicago, IL 60601
>
>      *s/Amy S. Ramsey*

Firmwide:115662733.5 069299.1033