| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| | FOR THE NORTHERN DISTRICT OF ILLINOIS |
| 2 | EASTERN DIVISION |

```
 3   MARISOL VELEZ, individually and )
     on behalf of all similarly      )
 4   situated persons,               )
                                     )
 5            Plaintiffs,            )
                                     )
 6     v.                            )  No. 12 C 4857
                                     )
 7   LONGHORN STEAKS, INC., and      )
     DARDEN RESTAURANTS, INC., d/b/a )
 8   LONGHORN STEAKHOUSE,            )  Chicago, Illinois
                                     )  August 20, 2012
 9            Defendants.            )  9:30 a.m.
```

```
10               TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE RONALD A. GUZMAN
11

12   APPEARANCES:

13   For the Plaintiffs:      ROBIN POTTER & ASSOCIATES, P.C.
                              BY:  MS. ROBIN B. POTTER
14                                 MS. STACEY L. SCANLON
                              111 East Wacker Drive
15                            Suite 2600
                              Chicago, Illinois  60601
16                            (312) 861-1800

17   For the Defendants:      LITTLER MENDELSON, P.C.
                              BY:  MR. JOHN ANTHONY YBARRA
18                                 MS. AMY SCHAEFER RAMSEY
                              321 North Clark Street
19                            Suite 1000
                              Chicago, Illinois  60654
20                            (312) 372-5520

21

22

23

24

25
```

Nancy C. LaBella, CSR, RMR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1222
Chicago, Illinois  60604
(312) 435-6890
Nancy_LaBella@ilnd.uscourts.gov

1       (Proceedings heard in open court:)

2               THE CLERK:  12 C 4857, Velez v. Longhorn Steaks,

3    Incorporated.

4               MS. SCANLON:  Good morning, your Honor.  Stacey

5    Scanlon on behalf of the plaintiff.

6               MS. POTTER:  Good morning, Judge.  Robin Potter, also

7    on behalf of the plaintiffs.

8               MR. YBARRA:  Good morning, your Honor.  John Ybarra

9    on behalf of defendants.

10              MS. RAMSEY:  Amy Ramsey on behalf of defendants.

11              THE COURT:  Good morning.

12              The complaint as it stands right now has how many

13   plaintiffs?

14              MS. SCANLON:  One plaintiff on behalf of a class of

15   employees as well.

16              THE COURT:  Any opt-ins yet?

17              MS. POTTER:  Judge, that's what we're seeking here,

18   your Honor's order to permit us to issue class notice so we

19   can start that process where people can opt in.

20              THE COURT:  Well, I'm just wondering if you had any

21   opt-ins before you issued --

22              MS. POTTER:  We don't have a class list from the

23   defendants.

24              THE COURT:  It happens sometimes.  You get --

25              MS. POTTER:  Sometimes.

1        THE COURT:  Okay.  So we have one plaintiff.  Are you

2   alleging a representative action and a Rule 23 class?

3        MS. POTTER:  Yes, Judge.

4        THE COURT:  Okay.

5        MS. POTTER:  We've learned from your great teachings

6   and the Seventh Circuit's in Ervin, and so we do have both

7   classes.

8        THE COURT:  Thank you, I think.

9        MS. POTTER:  No.  Thank you.

10        THE COURT:  And you want to split up discovery and

11   spend the next four months doing discovery on just the

12   precertification issue?

13        MR. YBARRA:  We do, your Honor.  We want to do -- on

14   behalf of the defense, we want to do very limited

15   precertification discovery.  Frankly, we can do it in less

16   than 120 days -- we can do it in 90 days -- to get that done

17   and determine what, if anything, should be done with

18   plaintiffs' request, which the Court has denied without

19   prejudice at this point, to issue notice and/or certification.

20        THE COURT:  Well, what would you do in terms of

21   discovery in 90 days on the certification -- on the

22   preliminary certification issue?

23        MR. YBARRA:  Take the plaintiff -- we've got one

24   plaintiff.  Take the plaintiff's dep.

25        THE COURT:  Okay.

 1          MR. YBARRA:  If the plaintiff identifies any other

 2   persons with knowledge, take those, take those depositions;

 3   but, again --

 4          THE COURT:  When you say persons with knowledge, what

 5   do you mean?

 6          MR. YBARRA:  Well, for example, there is a mention of

 7   another individual, whose name escapes me at this very moment,

 8   who may have knowledge.  Right now we've got one plaintiff

 9   from one restaurant.  There's a mention of another individual

10   from another restaurant nearby.  We take those two plaintiffs'

11   depositions.  And that's what I see doing out of the box.

12   Very limited written discovery to the extent they have --

13   they've talked to anybody else, they've interviewed anyone

14   else that does have knowledge of these allegations, to the

15   extent it existed outside that single restaurant, we would do

16   that, with just probably ten interrogatories, ten document

17   requests and probably an equal number of requests to admit.

18   That's my disc- -- that's my limited discovery I see doing,

19   Judge.

20          THE COURT:  Is it going to resolve anything?  Suppose

21   you take those depositions, you take the deposition of the one

22   plaintiff; says I don't know anyone else; I just do my job

23   here; I know they do it to me.

24          MR. YBARRA:  Uh-huh.

25          THE COURT:  So does that preclude a preliminary

1    certification, which is essentially a tool for finding out if

2    there are any other people in the same type of situation that

3    have been subjected to the same type of conduct?

4         MR. YBARRA:  It might, your Honor.  For example, it

5    may be -- whatever it is -- limited to this restaurant, maybe

6    to this individual.  This other person that they've mentioned

7    may prove out the same thing.  I'm sure that they'll take a

8    couple of depositions of a 30(b)(6) and/or managers in that

9    restaurant.  And if it turns out the policies are all

10   consistent with lawful treatment under the Fair -- of these

11   people for their -- for tipping, et cetera, and off-the-clock

12   time, if everything is consistent with the law, if it turns

13   out there's no indication of any pattern at all, even within

14   that restaurant, of doing things contrary to lawful policies,

15   then that would be relevant to this Court to consider in terms

16   of whether there's any basis to proceed at all with classwide

17   discovery on a national basis that involves 357 restaurants

18   across the USA.  That would be very relevant, your Honor, to

19   determine whether or not we have to do that type of full scope

20   discovery that the plaintiffs propose doing over the course of

21   the next year.

22        MS. POTTER:  Judge, that would turn the FLSA on its

23   head.  It's not what the Congress envisioned.  It's not what

24   the courts in this district envisioned.  You issue the 216(b).

25   The defendants then have a two-step process where they're

1  allowed to decertify if, in fact -- after seeing who opts in

2  after the dust settles.  That's all.

3        This is a simple case, a simple process.  Notice

4  issues.  If people believe they're in the class, they opt in.

5  Then defendants can take their deps and do a decert.  If --

6  the defendants have inverted the law, creating new law that

7  doesn't exist here.

8        MR. YBARRA:  And very briefly --

9        MS. POTTER:  The two-step process is what gives these

10 defendants that right.  And instead of foreclosing, as your

11 Honor said --

12       THE COURT:  I think what's -- well, I don't know what

13 counsel's response is going to be; I shouldn't say that.  But

14 the only question or concern I have here is sort of the size

15 of the undertaking at this point.  It's a national chain.

16       MS. POTTER:  Well, Judge, how this works is simple.

17 We get the class list.  We do the mailing.  We collect the

18 forms.  There's no imposition or burden on the defendant.

19 They produce the list.  We do the rest.  When the dust

20 settles, we see who opts in.  We turn over those opt-in forms

21 to the Court.  And then that's when that process of merits

22 discovery begins, not before.

23       We've met our burden under 216(b).  That's all we

24 have to do.  We've cited the Madden case.  We cited the Vander

25 Vennet case.  That's how it works in this district.

1          MR. YBARRA:  Well, your Honor, I wish it was that

2    simple; but it really isn't.  Their -- it's a lighter burden,

3    but it's an existent burden.  It isn't just plaintiff files

4    their motion; they automatically get it.  Congress did very

5    clearly hold that there was a burden there, otherwise why even

6    make a motion?  It would just be part of the opening

7    complaint.  So there is a burden there.

8          And this isn't a case in which we're talking about

9    ten restaurants or ten restaurants in northern Illinois.  This

10   is a nationwide case.  And there is a burden on us.  When they

11   send out notice -- these are current and former employees.  So

12   this is going to start litigation in our restaurants across

13   the country based on, you know, what's in a complaint and

14   affidavit without us doing a shred of discovery.

15          THE COURT:  It's not going to start litigation.  It's

16   just going to send out a notice.

17          MS. POTTER:  Correct.

18          MR. YBARRA:  Notice is going to our employees in our

19   restaurants and -- but -- and whatever that causes that we

20   will have to deal with, it's very clear that there is a burden

21   there that we should have some limited opportunity to oppose.

22   And plaintiffs are proposing that we get the right to do

23   absolutely nothing before this nationwide notice goes out.

24   And so, therefore, we should be allowed to do the very limited

25   discovery I outlined.

1      And if it turns out that the Court feels that, you

2   know, based on that limited being done in the next 90 days,

3   that notice should go out, then notice goes out.  But we

4   should have some opportunity to meaningfully respond to that.

5   And that's what Congress envisioned, as this Court and the

6   Seventh Circuit has.

7      MS. SCANLON:  Your Honor, we think, respectfully,

8   Mr. Ybarra is referring to the second step of the

9   decertification process -- or the certification process.

10  Right now we're at the notice stage where it's a very lenient

11  standard as set forth in the Seventh Circuit case law.  We

12  think notice should be issued, especially because these

13  people's claims are running.  The statute of limitation is

14  running on all of these other --

15     THE COURT:  Are you willing to enter into a

16  stipulation as to the statute of limitations?

17     MR. YBARRA:  Yes.  The list --

18     MS. POTTER:  That wouldn't matter, Judge, in the FLSA

19  because of people moving, memories fading.  And a tolling

20  agreement should enter, but notice is still necessary to get

21  people to opt in so we can start that investigation that

22  Mr. Ybarra speaks of that really goes on in the second stage

23  as to who -- the similarly situated practices.  We've met our

24  burden.  There's no question about it.  Taking the plaintiff's

25  deposition to say who do you know in Tennessee is irrelevant

1   under the law.  We've pled.  They have a nationwide

2   practice --

3            THE COURT:  Let me tell you what I'm thinking because

4   it just seems to me this is a commonsense way to do this.  And

5   I agree with you; I think taking the plaintiff's deposition

6   means next to nothing.

7            MS. POTTER:  Yes.

8            THE COURT:  I shouldn't say that, but it's not

9   necessarily dispositive of anything.

10           I would think that, say, a 45-day period for sending

11  out a limited number of notices to a -- I hesitate to say

12  representative sample because this is not going to be a

13  scientific process -- but to a sample of employees to see what

14  kind of responses you get.  If you get back no responses, if

15  you take a limited number of depositions and there's

16  absolutely no indication of any pattern of conduct, then I

17  think there's a real issue; and that's what precertification,

18  I think, is supposed to do at a very low, minimum level.  When

19  you're undertaking a large notice process such as this with a

20  large number of individuals and a huge number of sites, I

21  don't think that's inappropriate.

22           MS. POTTER:  Judge, I don't know how many -- this is

23  a very small class.  It's servers.  That's all.  These are not

24  every employee of Longhorn Darden.  It's the Longhorn

25  Steakhouse servers.

1          And our problem is that when you get a class list and

2     you do a mailing, then you get a percentage of returns, which

3     is usually very small.  And the burden -- and then to

4     interfere with the right of certain class members to get

5     notice and you pick at random, I do confess I've never seen

6     that.  I've just only seen notice to all similarly situated.

7     And the amount of returns could be very tiny; 10 percent, 20

8     percent.  That's how it goes in 216(b) collective actions.

9          So I would, with all due respect, Judge, just ask

10    that we --

11         THE COURT:  How many notices do you contemplate

12    sending out?

13         MS. POTTER:  I don't know the size of the class

14    because Mr. Ybarra hasn't given us a class list, but I don't

15    think it's very large.

16         THE COURT:  How many notices will they be sending

17    out?

18         MR. YBARRA:  Well, we're talking about a notice -- a

19    notice to the class that would go out?

20         THE COURT:  Yes.

21         MR. YBARRA:  Well, we're talking 357 restaurants

22    with -- over the course of --

23         THE COURT:  How many actual notices?

24         MR. YBARRA:  387 restaurants.

25         THE COURT:  How many people?

1          MR. YBARRA:  With, let's say, 10 to 20 servers.

2    Probably five to 7,000 notices.

3          THE COURT:  Ten to 20 servers you think in each --

4          MR. YBARRA:  When we go back over the statute of

5    limitations period, your Honor, yes.

6          MS. POTTER:  Judge, we issued notice in the Sprint

7    case, which is a certified class before her Honor Judge

8    Finnegan, and we issued 56,000 notices.  It's -- without a

9    blink.  It's a question of printing.

10          MR. YBARRA:  Your Honor, what you're suggesting is --

11   in terms of allowing us to send out a very limited number of

12   deposition notices is a perfect solution.  If I'm wrong, then

13   we're going to be proven in 45 days, then -- we're going to be

14   proven wrong very quickly before we go issuing thousands and

15   thousands of class notices.

16          THE COURT:  I think that that's a commonsense -- to

17   me it's a commonsense way to approach it.  My concern is that

18   it may not really get me anywhere.

19          MS. POTTER:  Well, we don't mind, Judge, that process

20   as envisioned by the law after notice issues.  When you get

21   your opt-ins filed, then you do a representative sampling of

22   depositions.  Usually it's no more than 15 percent or so, or

23   even less.  That's how we do that.  But -- it's exactly what

24   the law envisions, but not at this stage.

25          MR. YBARRA:  Well, your Honor --

1          THE COURT:  I know what you're saying.  But the

2   question is, how do we shrink that down to give them some

3   ability to contest at the precertification stage --

4          MS. POTTER:  Well, we --

5          THE COURT:  -- because it's not -- it can't be and

6   it's not a simply "we file and we get the notice."

7          MS. POTTER:  We're not suggesting that.  We're

8   suggesting we met our collective action burden of similarly

9   situated.  And so you can't arbitrarily say people in

10   Tennessee get notice but not in Illinois.  When the class is

11   this small, if I take his numbers, it's 3,500 maybe or 7,000.

12   That's tiny.

13          THE COURT:  Here's what I'm going to do -- and I'm

14   going to leave it up to them -- I'll give you 45 days to

15   respond.  I think she's right.  I think they have essentially

16   come up to or are very close to the bar that they have to

17   meet.  But I'll give you 45 days to see if you can find

18   information to contradict that.

19          MR. YBARRA:  Very good.

20          THE COURT:  And then we'll issue a ruling on the

21   precertification and on the notification.

22          Now, I assume that if indeed the ruling is that we're

23   going to go ahead with notification, we're not going to have

24   any problems with identifying the class?

25          MR. YBARRA:  Of course not, Judge.  If your Honor

1   orders after -- after doing 45 days of limited discovery and

2   giving us a very brief time to file our opposition -- we

3   haven't even had a chance to do that -- if the Court orders

4   notice, we're going to respond to your Honor very quickly.

5          MS. POTTER:  Judge, what is to occur in that 45 days?

6   I mean, this is going to be a massive point of contention.

7          MR. YBARRA:  I don't see it --

8          MS. POTTER:  Unless it's very --

9          THE COURT:  What's going to happen in the next 45

10  days?

11         MR. YBARRA:  I am going to issue -- just as I

12  outlined to the Court.  I'm going to issue very limited

13  interrogatories and document requests.  I'm going to notice up

14  these two individuals that they have.  I'm going to find out

15  where they got this locally created sidework policy with the

16  smiley face.

17         This -- part of this is how much sidework are these

18  people doing; are they allegedly -- this server, how much is

19  she doing and is she allegedly doing it off the clock.  What's

20  attached to their brief is a sidework policy that was locally

21  created, some type of Word document that this young lady

22  apparently picked up from the restaurant with a smiley face on

23  it.  It's not a company policy or anything.  So that's why I'm

24  starting at that restaurant, and I'm going to figure out what

25  this -- maybe she got it from somebody else.  I don't know.

1          But I'm going to do ten interrogatories, ten document

2    requests.  I'm going to take these two people's depositions.

3    If they've got somebody that they have, some manager or

4    management person, we're going to produce those people for

5    depositions.  And I'm going to come back, finish up in 45

6    days, and then I'm going to file my opposition brief so that

7    I'm going to be -- we're going to be ready to bring it back

8    before the Court within 60 days and get your Honor's ruling.

9          MS. POTTER:  Judge, if I might?  I mean, with all due

10   respect, this really just turns collective actions on their

11   head because for now we should have some kind of limited

12   notice at least to do what your Honor said or class list so we

13   can start the investigation we need.

14         THE COURT:  Give them a class list.

15         MS. POTTER:  Thank you.  And --

16         THE COURT:  You can start getting your notifications

17   ready.

18         MS. POTTER:  Thank you.  If we could have that in

19   seven days on a computerized format, Excel sheet, that would

20   be great.  14 days at most.

21         MR. YBARRA:  What's going to be sent out, Judge?  We

22   don't -- there shouldn't be anything sent out until your Honor

23   has ruled on that notice.  And you're going to do -- you're

24   going to order that, I'm sure, within 60 days.

25         MS. POTTER:  We're allowed to start our fact

1    investigation.  The class list should be turned over.

2            THE COURT:  Let them have the class list.

3            MS. POTTER:  And we can --

4            THE COURT:  They can prepare the notifications.

5            MS. POTTER:  Thank you.

6            MR. YBARRA:  May we --

7            THE COURT:  If indeed I find that you have rebutted

8    the precertification conclusion, there's no harm, no foul.

9    They're not going to use that information for anything else.

10   You can put it in the order.

11           MR. YBARRA:  That they may not use that information

12   for anything other than their --

13           MS. POTTER:  This case.

14           MR. YBARRA:  -- investigation?

15           But no notice is going out, nothing is going to be

16   sent out to the --

17           THE COURT:  No, no notice is going out.

18           MR. YBARRA:  -- class?

19           THE COURT:  Exactly.

20           MR. YBARRA:  Okay.  Very good, your Honor.

21           MS. POTTER:  Judge, can we get that in a reasonable

22   prompt period of, say, seven days?

23           MR. YBARRA:  Well, your Honor, we will --

24           THE COURT:  I'm sorry?

25           MS. POTTER:  What is the date by which defendants

1     will turn that over?  Seven days?

2          MR. YBARRA:  Your Honor --

3          THE COURT:  14 days is fine.

4          MS. POTTER:  That's great.

5          MR. YBARRA:  Thank you, your Honor.

6          MS. POTTER:  And, Judge, I heard counsel say they did

7     not object to tolling, so does the statute toll from the date

8     of filing the complaint?

9          THE COURT:  Do you have any objection to that?

10         MR. YBARRA:  I have no objection to filing from the

11    date -- for example, your Honor, the date they -- that your

12    Honor ruled on -- that denied this without prejudice until the

13    date your Honor rules -- actually rules on the motion.

14         MS. POTTER:  Judge, I mean --

15         MR. YBARRA:  That's the period that we're covered

16    here.

17         MS. POTTER:  Well, we did file it with the complaint

18    but that's --

19         MR. YBARRA:  Is it a -- your Honor --

20         MS. POTTER:  We did file it with the complaint.

21         MR. YBARRA:  From the date they filed it, your Honor,

22    to the date that your Honor rules, that's fine.

23         THE COURT:  Okay.

24         MS. POTTER:  And, your Honor, we're not foreclosed

25    from, therefore, issuing our discovery as well to the

1    defendants in this 45 days, our limited discovery?  We want

2    the policies.  We want the timekeeping records.  We want the

3    payroll records.

4         MR. YBARRA:  Well, I do object to -- policies, your

5    Honor, no problem whatsoever.  But for giving payroll records

6    and records -- that's what we're trying to avoid, if it can

7    be, is doing discovery on thousands and thousands of people at

8    this point for the next 60 days.  I would have no objection,

9    for example, to doing it in that restaurant, the payroll

10   records for these, I'm guessing, 20 people, the 20 servers in

11   that restaurant, giving the payroll records and personnel

12   records for those people.

13        THE COURT:  Sounds to be a good compromise to me.

14        MS. POTTER:  Well, I guess our problem with that,

15   Judge, is we know that there are policies and practices in the

16   different stores that emanate from Longhorn centrally.  So we

17   need those policies and practices.

18        MR. YBARRA:  Well, I said -- I'm sorry.  I didn't

19   mean to interrupt, Robin, but we're going to give any company

20   policies that applied --

21        THE COURT:  He agreed to the policies.

22        MR. YBARRA:  Yes.

23        MS. POTTER:  Right.  And in terms of -- I mean,

24   Judge, if we could at least get the payroll records and

25   timekeeping records for Illinois, that would be --

1        THE COURT:  No, you can have that after we issue the

2   go-ahead on the precertification notifications.

3        MS. POTTER:  Now, my only --

4        THE COURT:  You can start your discovery then at that

5   point.

6        MS. POTTER:  Okay.  Judge, my only concern too about

7   taking the deposition of a non-party -- I mean, we understand

8   your Honor has ordered the named plaintiff; but it's highly

9   irregular at this point -- we're not in full discovery.  I

10  don't even know -- this is a non-party.

11       THE COURT:  It's not irregular.  If he's got

12  information that bears upon the issue before the Court,

13  they're entitled to take his deposition.  If He's got that

14  information; they get the deposition.

15       MS. POTTER:  Precert?

16       THE COURT:  I'm sorry?

17       MS. POTTER:  Precertification they get --

18  precertification?

19       THE COURT:  Well, that's the issue.

20       MS. POTTER:  Okay.

21       THE COURT:  The issue is should there be a

22  precertification ruling.  And if this person has information

23  on that, they're entitled to take his deposition.  I don't

24  care if he's a party or he lives in Hong Kong.

25       MS. POTTER:  That's fine, Judge.

 1          THE COURT:  It doesn't matter.

 2          All right.  So you both have some limited discovery.

 3  You've got a 45-day period for taking the discovery with

 4  respect to the precertification issue.  In 60 days your

 5  responsive brief on the certification issue --

 6  precertification issue will be filed.  And we'll issue a

 7  ruling by mail.

 8          MR. YBARRA:  Very good.

 9          MS. POTTER:  We did also, Judge, suggest in the

10  discovery order the exchange of 26(a)(1)s.  And it's our

11  proposal that that be done somewhat promptly and that -- we

12  typically exchange the relevant documents, but I understand

13  that may not be possible.  But at least for the plaintiff --

14          MS. RAMSEY:  We agreed to the 27th, and we'll

15  promptly respond to discovery requests and collect the

16  documents.  That shouldn't be a problem.

17          MR. YBARRA:  I don't think we have a disagreement,

18  Judge.

19          THE COURT:  I don't think so either.  Okay.

20          MR. YBARRA:  Thank you, your Honor.

21          THE COURT:  Wait.  We need a status hearing.  So make

22  it another 15 days after that.

23          MS. RAMSEY:  One additional matter, if we could, your

24  Honor.

25          The complaint lists Longhorn Steaks as a defendant.

1    And we've noted in footnotes in a couple of pleadings thus far

2    that that entity doesn't exist.  I'm not sure if there's

3    anything we can or should do at this point in time.

4            MS. POTTER:  We'll work with counsel on the misnomer.

5    We have no problem with correcting that as needed.

6            THE COURT:  I would think you wouldn't.

7            MS. POTTER:  No, not at all.

8            MR. YBARRA:  Very good, your Honor.

9            THE CLERK:  Status hearing, November 14th at 9:30.

10           MS. POTTER:  Judge, if I might check?  I think I'm in

11   Cuba at that time.  I do regret -- and I can't -- Groucho Marx

12   said you can't be in two places at once.

13           What time would that be?

14           THE CLERK:  November 14th at 9:30.

15           MS. POTTER:  I'm not in town, Judge.

16           THE COURT:  When are you going to be in town?

17           MS. POTTER:  I don't leave until -- I can be here the

18   8th or sooner.

19           THE COURT:  That won't give us enough time.  After

20   the 14th of November then.

21           MS. POTTER:  The -- I will be back the 20th, by the

22   20th.

23           THE CLERK:  November 21st at 9:30.

24           MR. YBARRA:  Is that the week of Thanksgiving?

25           THE CLERK:  Yes.

1          MR. YBARRA:  I'm sorry.  That is my vacation week

2     because the kids are off from school.

3          THE CLERK:  The next week?

4          MR. YBARRA:  I'm back.

5          THE CLERK:  November 28th at 9:30.

6          MS. POTTER:  John, are you here on the 19th?

7          MR. YBARRA:  I --

8          MS. POTTER:  That's a Monday.

9          THE COURT:  The 28th, folks.

10          MR. YBARRA:  Thank you very much.

11          THE COURT:  Call the next case.

12          MR. YBARRA:  Thank you, your Honor.

13          MS. POTTER:  Thank you, Judge.

14                    *    *    *    *    *

15

16     I certify that the foregoing is a correct transcript from the
       record of proceedings in the above-entitled matter.

17

18
       */s/ Nancy C. LaBella*                    *August 22, 2012*
19     Official Court Reporter

20

21

22

23

24

25