# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 4857 | **DATE** | 12/21/2012 |
| **CASE TITLE** | *Velez v. Longhorn Steaks, Inc. et al.* | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, the plaintiff's motion for conditional certification [6-1] is denied. Status hearing set for January 11, 2012 at 9:30 a.m. At the status, the plaintiff shall be prepared to discuss how she intends to proceed, including whether she plans to revise the proposed class definition.

■[ For further details see text below.]  Docketing to mail notices.

## STATEMENT

Marisol Velez is a former employee of the Longhorn Steakhouse located in Norridge, Illinois. She alleges on behalf of herself and others similarly situated that Longhorn Steaks, Inc. and Darden Restaurants, Inc. d/b/a Longhorn Steakhouse ("Longhorn")[1] violated the Fair Labor Standards Act ("FLSA") by requiring servers to: (1) perform substantial cleaning and other duties for the "tip credit" minimum wage; (2) participate in a mandatory tip pool in which the restaurant skimmed a portion of their earned tips; and (3) work off the clock before and after their regularly scheduled shifts. The parties were allowed approximately sixty days of pre-certification discovery. Velez seeks a court-approved notice to the following nationwide class ("FLSA Class") regarding opting-in to this case:

> All persons who have been employed by Defendants or their predecessors as servers at any time from June 2009 through and including the present and until final resolution of the case, and who have not been paid the statutory minimum wage for all regular hours worked, or overtime wages at the rate of one and one half times their regular rate for all the time worked over 40 hours in individual work weeks.

FLSA overtime wage claims may be pursued through a collective action on behalf of the named plaintiffs and similarly situated workers. 29 U.S.C. § 216(b); *Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010). Generally, courts considering whether FLSA claims may proceed as a collective action use a two-step process. *Larsen v. Clearchoice Mobility, Inc.*, No. 11 C 1701, 2011 WL 3047484, at *1 (N.D. Ill. Jul. 25, 2011). First, the court considers whether to conditionally certify a class. To obtain this relief, a plaintiff must make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hundt v. DirectSat USA, LLC*, No. 08 C 7238, 2010 WL 2079585, at *2 (N.D. Ill. May 24, 2010) (citation and internal quotation marks omitted). "If the plaintiff meets this light burden, the court conditionally certifies the class, and notice is sent to

potential class members, giving them an opportunity to opt into the suit. At this stage, the court does not resolve factual disputes or decide substantive issues going to the merits." *Larsen*, No. 11 C 1701, 2011 WL 3047484, at *1. Second, after the parties have had an opportunity to pursue discovery and the opt-in process is complete, the court must reevaluate certification using a more rigorous standard. *Id.*

In support of her motion for conditional certification, Velez refers to affidavits from herself and Joseph Kilgannon, a server at the Norridge and Des Plaines Longhorn restaurants, which state that Longhorn required servers to devote substantial time performing deep cleaning and other tasks that were unrelated to providing service to customers and paying only the tip credit (sub-minimum) wage for this work. Specifically, Longhorn purportedly required servers to deep clean the dining area, the kitchen or the "back of the house" for one to two hours after the server's last table left. (Velez Decl. ¶ 12; Kilgallon Decl. ¶ 10.) These tasks included, among other things, deep cleaning booths and floor boards, removing gum, cleaning soda guns and dusting shelves and artifacts. (Velez Decl. ¶ 12; Kilgallon Decl. ¶ 10.) Velez points also to what is apparently a Longhorn memorandum detailing weekly cleaning duties. (Pl.'s Ex. D.) In addition to cleaning, Velez and Kilgallon state that servers were required to roll large amounts of silverware before and after each shift, also while being paid the tip-credit minimum. (Velez Decl. ¶ 16; Kilgallon Decl. ¶ 14.)

Velez also contends that Longhorn regularly retained earnings from the tip pool, to which servers were required to contribute. (Velez Decl. ¶ 21; Kilgallon Decl. ¶ 19.) At the end of a shift, the server "cashed out," which meant that the server either owed a portion of her cash earnings to the restaurant for the tip pool or the restaurant owed the server a portion of its credit card earnings. (Velez Decl. ¶ 20; Kilgallon Decl. ¶ 18.) If the server owed a portion of her cash earnings to the restaurant, Longhorn rounded up unless the server had exact change or asked for change back. (Velez Decl. ¶ 22.) If the restaurant owed the server an amount from the credit card receipts, Longhorn rounded down unless the restaurant had exact change, the server could provide change, or the server never asked for the full amount. (Velez Decl. ¶ 23.) According to Velez, this practice resulted in the restaurant illegally retaining portions of tips received by the servers.

Finally, Velez asserts that Longhorn regularly required employees to work off the clock. According to Velez, Longhorn regularly required workers to clock out when they reached 40 hours per week in order to avoid paying overtime. (Velez Decl. ¶ 26; Kilgallon Decl. ¶ 21.) In addition, Velez asserts that managers also required servers to wait for the closing manager to complete the final report of the day, and correct any problems noted by the manager, all while off the clock. (Velez Decl. ¶ 17; Kilgallon Decl. ¶ 15.) In addition, Velez contends that workers regularly did not clock in when they arrived early to roll silverware or attend staff meetings. (Velez Decl. ¶¶ 16, 28, 29; Kilgallon Decl. ¶¶ 14, 22, 23.)

Longhorn argues that Velez's evidence is insufficient to support even the lenient standard required for a finding that Velez and potential plaintiffs were victims of a common plan or policy that violated the law. As already noted, Velez submits her own declaration, that of Joseph Kilgallon, and a one-page memo entitled "Updated Weekly cleaning and end of day duties." To her reply, she also attaches a group of Longhorn documents, apparently obtained during discovery, that appear to set forth side work duties for servers and bartenders. (Pl.'s Group Ex. 1, Dkt. # 65-1.)

As noted by Longhorn, however, both Velez and Kilgallon's declarations contain general statements about what workers "regularly" were required to do without any indication that they possess personal knowledge regarding what was required of their co-workers across the nation. For example, with respect to the off-the-clock work, Kilgallon and Velez both state that "Longhorn regularly required servers to clock out when they reached 40-hours [sic] to avoid paying overtime, and required servers to stay and complete their

shifts off the clock." (Velez Decl. ¶ 26; Kilgallon Decl. ¶ 21.)  But the declarations lack any basis for this purported knowledge.  In rejecting an affidavit in an FLSA case that purported to speak to circumstances in the defendant's offices across the nation, this Court noted that:

> Schultz argues that his declaration is evidence that the field adjusters in each of American Family's thirty-two offices performed the same work. But his declaration does not say anything about the extent to which he interacted with PD adjusters who were attached to other claims offices or otherwise lay a foundation for his purported knowledge of the work they perform.

*Schultz v. Am. Family Mut. Ins. Co.*, 04 C 5512, 2005 WL 5909003, at *3 (N.D. Ill. Nov. 1, 2005).  The Court cannot accept broad assertions about how other servers across the nation were being paid without any foundation that Velez or Kilgallon had personal knowledge of this.  *Sjoblom v. Charter Commc'ns*, LLC, No. 07–CV–0451, 2007 WL 4560541, at *9–10 (W.D. Wis. Dec. 19, 2007) ("An affiant must testify about what he observed himself and not speculate about what he thinks happened.") (citing *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003)).

With respect to the tip pool, Velez attests that "Longhorn required all servers to contribute a portion of th[e] 'cash out' to a mandatory tip pool" (Velez Decl. ¶ 22), and that "management's policy and practice" was to round up on the cash earnings the server paid to the restaurant and round down as to the credit card earnings the restaurant paid to the server.  (*Id.*).  While Velez may have personal knowledge of the practice with respect to her own restaurant, the affidavit does not support a nationwide policy and practice by Longhorn.  In addition, Kilgallon's declaration makes no reference to this practice.

Finally, as to the side work, Velez details the types of cleaning she and other servers were required to do and then states that "all servers were required to perform this work" and that "[w]e were all paid the server wage for this work." (Velez Decl. ¶ 15.)  Again, however, while seeking to send notice to a nationwide class, Velez provides no basis for any personal knowledge about how Longhorn servers across the nation were paid for side work they performed.

Moreover, while the documents submitted by Velez appear to establish that Longhorn required servers and bartenders to perform side work, these same documents do not indicate that the employees were paid improperly for the work.  Indeed, one document, which states at the bottom that it is the "Longhorn Steakhouse Operations Manual– Policies and Procedures – Revised April 2007" (Pl.'s Group Ex. 1, Dkt. # 65-1, PageID # 841), provides that "[t]eam members, whose job functions include side work, should be appropriately scheduled to accommodate proper completion of side work."  It goes on to state that "[u]nder no circumstances, [sic] should you schedule a team member to arrive early/stay late to perform side work 'off the clock'" and further that "[s]hould the team member be required to stay late to complete side work projects, the team member must be paid at least minimum wage." (*Id.*)  Thus, Velez's contention that Longhorn has a policy of not properly paying its servers for side work is actually undermined by the documents she attaches to her reply brief.

Finally, the Court notes that, despite a detailed opposition by Longhorn, Velez's reply does not address the claims that servers were required to perform work off the clock or that Longhorn was improperly retaining part of the servers' tips through rounding.  Yet, Velez's proposed notice to a nationwide class includes these two claims.  Due to Velez's failure to address these bases for relief in her reply, it is unclear to the Court whether she intends to pursue them.

|  |
|---|
| **STATEMENT** |
|     While the Court recognizes that the standard for obtaining conditional certification is not stringent, the motion seeking conditional certification is "not a mere formality." *Nogueda v. Granite Masters, Inc.*, No. 2:09-CV-374, 2010 WL 1521296, at \*2 (N.D. Ind. Apr. 14, 2010). Because Velez has failed to make even the modest factual showing sufficient to demonstrate that she and potential plaintiffs together were victims of a common policy or plan that violated the law such that nationwide notice should issue, the Court denies the motion for conditional certification and for issuance of notice. |
|  |

1. In its opposition to the motion for conditional certification, Darden Restaurants, Inc. ("Darden") asserts that the entity named as a defendant "Longhorn Steaks, Inc." does not exist. It further states that Darden Restaurants does not do business as Longhorn. Rather, Darden states that the entity that does business as Longhorn is RARE Hospitality International, Inc., a wholly-owned subsidiary of GMRI, Inc., which is a wholly-owned subsidiary of Darden that employs Longhorn servers. For ease of reference, the Court refers to defendant Darden as Longhorn in this order.